214     319
f218    ²503

## Commonwealth ex rel. *v.* James, Appellant.

*Mandamus—Legal right—Legal remedy—Practice, C. P.*

The remedy by mandamus is a strictly legal one; and the relator must establish a specific legal right as well as a want of a specific legal remedy.

*Mandamus—Quo warranto—Boroughs.*

Where a person claiming that the office of councilman of a borough had been vacated by reason of the removal of the member from the borough, has his own name placed on the official ballot by some method not prescribed by law, and at the ensuing election his name is voted for by a majority of the electors, he cannot maintain mandamus against the councilmen to compel his admission to office; and this is the case although the

petition for mandamus was not filed until there was an actual and admitted vacancy in the office created by the resignation of the previous member.

Argued Feb. 13, 1906. Appeal, No. 301, Jan. T., 1905, by defendant, from judgment of C. P. Schuylkill Co., Sept. T., 1905, No. 18, on petition for mandamus in case of Commonwealth ex rel. Samuel Stahl v. David R. James, President, and Wm. Neiswender, John Fishburn, Wm. Lewis, Paul W. Houck, John Schaefer, Peter Kirk, Henry J. Muldoon, Patrick Burke, John J. Burns, Michael Durkin, Jacob Shane, Anthony Nawvitski, Corby Stack, Members of the Town Council of the Borough of Shenandoah. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Petition for mandamus.

The facts are stated in the opinion of the Supreme Court.

The court in an opinion by MARR, J., entered judgment for the petitioner.

*Error assigned* was the judgment of the court.

*M. M. Burke* and *Geo. M. Roads*, for appellant.—Mandamus does not lie in such a case: Com. v. County Commrs., 5 Rawle, 75; Com. v. Perkins, 7 Pa. 42; Com. v. Swasey, 133 Mass. 540; Hammer v. State, 44 N. J. L. 667; People v. Loomis, 8 Wend. (N. Y.) 396; Com. ex rel. v. Cullen, 13 Pa. 133.

We earnestly urge that the "vacancy" contemplated is one existing at the time relator acquired his title to the office, and has no application whatever to one occurring after relator's title thereto is complete, be it good or bad: State v. Taylor, 12 Ohio St. 130.

The writ of mandamus in this case should have been quashed for the reason that the relator did not make out a clear prima facie legal right to the seat: Com. v. Anthony, 4 W. & S. 511; Com. v. County Commrs., 16 S. & R. 317; Mercur v. Light, Heat & Power Co., 19 Pa. Superior Ct. 519; Com. v. Henry, 49 Pa. 530; James v. Commrs. of Bucks Co., 13 Pa. 75; Com. v. Mitchell, 2 P. & W. 217; Heffner v. Com., 28 Pa. 108; Reading v. Com., 11 Pa. 196.

Magargle's seat was not vacant, by reason of his removal to an adjoining township in November, 1904, his intention being

to retain his residence in the ward: Pfoutz v. Comford, 36 Pa.
420; Casey's Case, 1 Ashmead, 126; Fry's Election, 71 Pa.
302.

*James J. Bell,* for appellee.—Stahl was duly elected: In re
Nominations, 6 Pa. Dist. Rep. 670.

Where a vacancy exists in an office and the voters have ac-
tual notice that it is to be filled, and the election is held at the
proper time and place by the proper officers, and there is a
reasonably large number of votes polled, the election is valid,
although the office is not mentioned in the election proclama-
tion: Bongard's Petition, 41 Legal Int. 124; Com. v. Rey-
nolds, 5 Kulp, 547; Battis v. Price, 2 Pearson, 456; Porter
Twp. Election Case, 5 Pa. C. C. Rep. 217.

Where the election officers issue a certificate it is prima facie
written title to the office: High on Extraordinary Legal Rem-
edies, sec. 638; Kerr v. Trego, 47 Pa. 292; Com. v. Baxter,
35 Pa. 263.

Council has no power to judge of the qualifications of its
members, except where there is positive law giving them that
power: Commonwealth v. Allen, 70 Pa. 465; Lamb v. Lynd,
44 Pa. 336; Commonwealth v. Leech, 44 Pa. 332.

The kind of residence which is to govern in this case, is that
meant in art. VIII of the constitution: Chase v. Miller, 41
Pa. 403; Com. v. Clark, 7 W. & S. 127; Page v. Allen, 58 Pa.
338.

Members of a borough council must be residents of the ward
which they represent; when a member moves out of his ward
his seat in council is vacated and he will be ousted therefrom
upon quo warranto: Com. v. Yeakel, 13 Pa. C. C. Rep. 615;
Com. v. Allen, 70 Pa. 465.

The forfeiture occurs whenever the union of facto takes
place—being a councilman and becoming a nonresident:
Cleaver v. Com., 34 Pa. 283; Com. v. Leech, 44 Pa. 332;
Lamb v. Lynd, 44 Pa. 336; Com. v. Allen, 70 Pa. 465; Lea-
man's App., 8 Lanc. 405; Hindman's App., 85 Pa. 466; Mintz-
ner's Est., 13 Pa. C. C. Rep. 465; Holmes v. Greene, 73
Mass. 299; Bennett v. Watson, 47 N. Y. Supp. 569; Hart v.
Kip, 26 N. Y. Supp. 522; State v. Allen, 50 L. R. A. 284.

Proceedings in quo warranto will not be entertained when

the writ of mandamus affords the appropriate and fitting remedy : State v. Lewis, 10 Ohio St. 128 ; High on Extraordinary Legal Remedies, sec. 645.

OPINION BY MR. JUSTICE ELKIN, March 5, 1906:

This proceeding is like a house built on sand, the foundation being swept away, the superstructure crumbles and falls.    At the February election in 1904 Magargle was duly elected councilman from the second ward of the borough of Shenandoah, for a period of three years, commencing the first Monday of March, 1904, and ending the first Monday of March, 1907.    He qualified as a member, participated in the organization of council, was assigned to certain committees like other councilmen, performed his duties and continued to act in his official capacity and assert his title to the office until May 10, 1905, when he tendered his resignation.    He was a resident of the second ward and conducted his business as a merchant therein for a period of thirteen or fourteen years.    He not only claimed a residence in the ward at the time of the February election in 1905, but actually voted at that election.    That he was well known to and enjoyed the confidence of the electors is shown by the fact that he was elected to four successive terms of councilman in his ward.    Having suffered financial reverses, it became necessary for him to dispose of his real estate, located in the ward, which he sold in the summer of 1904, and gave possession to the purchaser thereof on November 9, following.    Not having been successful in renting a house, he made temporary arrangements to lodge his family at Lost Creek until a permanent place in the ward of his residence could be secured.    In the meantime under an agreement with the purchaser of his property he left a bed, couch and some chairs therein so that he could make use of the house as a place to lodge until he had secured a permanent place for himself and family.    Under this arrangement he made his former place of residence headquarters for the settlement of accounts, receiving of mail and transaction of business.    He denied any intention of changing his place of residence, continued to act in his official capacity, attended meetings of council, and voted upon measures before that body.    This was the condition of affairs when the February election of 1905 was held.    At that

time Magargle was a sitting, acting, de facto member of the borough council, actually performing his duties as such, with his right to so act unquestioned and unchallenged by anyone in a regular and legal proceeding. Under these facts there was no vacancy to be filled by the election of his successor.

The relator, acting on the assumption that Magargle's seat in council either was or would be declared vacant by reason of his alleged removal from the ward under the circumstances hereinbefore stated, concluded to fill the alleged vacancy by having himself elected at the February election. Notice of a vacancy was not given by anyone in authority so to do, and none of the political parties or organizations nominated candidates for said office at their primaries, nor was the name of the relator placed on the ballot by nomination papers in the regular way, nor did his name appear in the election proclamation. By some method not prescribed by law and not satisfactorily explained by the testimony, the official ballot when certified by the county commissioners contained his name and he received a majority of the votes cast at the election, which fact was certified by the election officers. This is the foundation upon which the relator relies to compel by mandamus the members of the borough council to admit him to participate in the proceedings thereof and to receive and count his vote. This court has frequently announced the rule that the remedy by mandamus is a strictly legal one, and that the relator must establish a specific right as well as a want of a specific legal remedy: Commonwealth v. Mitchell, 2 P. & W. 517; Reading v. Commonwealth, 11 Pa. 196; James v. Commissioners of Bucks County, 13 Pa. 72; Heffner v. Commonwealth, 28 Pa. 108; Commonwealth v. Henry, 49 Pa. 530.

In the case at bar the relator had no legal right to the office, the enjoyment of which he seeks to compel by mandamus, and under the rule stated this is the end of his case. There was no vacancy to be filled at the February election in 1905, and his certificate of election was a nullity and conferred no rights on him. His certificate of election cannot be recognized as valid without disregarding the safeguards with which the legislature has protected the ballot and treating our election laws as a farce. There was only one method of testing Magargle's right to the office when the election in 1905 was held, and that

was by quo warranto. He was then an acting member, performing his official duties and asserting his right to the office. It cannot be seriously contended that his title to the office to which he had been regularly elected can be tried and determined by popular vote. It is important that the citizens of a borough should enjoy all their privileges in the election of competent and faithful public servants, but it is just as essential that these privileges be exercised in the orderly and legal manner provided by act of assembly. Not to do so would mean endless confusion and constant irritation.

The learned court below and counsel for appellee rely principally on the ground that when the petition for the alternative writ was filed July 3, 1905, there was a vacancy in the office, and that by reason of this fact the court could inquire into the whole question and enforce its conclusions by mandamus. It is true there was a vacancy at this time, but it was a vacancy occasioned by the resignation of Magargle in May, and this fact could not put relator in any better position than he occupied at the time of the February election. The rights of relator, whatever they be, are derived from his so-called election in February, and must be determined under conditions as they existed at that time. If he had no rights then he acquired none subsequently; if he had rights derived under that election he continued to enjoy them irrespective of what Magargle did later. He must stand or fall by the conditions existing when he received his certificate of election under which he claims the office. At that time the proper remedy to determine the title to the office as between the relator and Magargle was by quo warranto under the Act of April 13, 1840, P. L. 319; Commonwealth v. Cullen, 13 Pa. 133; Commonwealth v. Anthony, 4 W. & S. 511; Gilroy v. Commonwealth, 105 Pa. 484; High on Extraordinary Legal Remedies (1st ed.), sec. 633.

The fact that a vacancy in the office occurred some months later by the resignation of Magargle does not confer any rights upon the relator which he did not enjoy in February when he claims to have been elected. When the vacancy occurred in May by the resignation of Magargle, it could only be filled under the Act of June 1, 1883, P. L. 54, wherein it is provided "the members of the town council shall have power to fill any vacancy which may occur therein by death, resignation, removal

from the borough or otherwise, until the next annual election for members of town council, when such vacancy shall be filled by electing a qualified citizen to supply the same for the balance of the unexpired term." It is clear, therefore, that when the vacancy occurred by the resignation of the incumbent in May, it was the duty of the members of the borough council to fill it. If they refused to make an appointment they might be compelled by mandamus to perform their duty as required by the act of assembly. In any event, however, mandamus would not lie to compel them to appoint a particular person, but only to do a particular thing, to wit: fill the vacancy by the appointment of some person. In such cases the members of council can exercise their discretion in the selection of a qualified person and the court is without power to compel the appointment of a particular person, as, for instance, the relator in this case.

Judgment reversed at the cost of the appellee.