IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1857.

## Commonwealth *ex relatione* Attorney-General *versus* Garrigues.

When a statute prescribes a mode for inquiring into and determining the regularity, and legality of a municipal election, and the returns made thereof, the remedy provided by the statute must be followed, to the exclusion of the common law mode of redress.

And when the judgment of a particular tribunal is made final on the merits, they cannot be drawn in question in another court, in a proceeding different from the statutory mode, no more than the decision of the constituted tribunal could be re-examined in a collateral proceeding.

The Commonwealth is bound by statutes, made to prevent tortious usurpations, and to regulate and preserve the right of all elections.

The provisions of the Act of the 2d February, 1854, incorporating the city of Philadelphia, prescribing the manner and form of inquiring into and determining elections for municipal officers, excludes all other remedies for matters which might have been investigated in the mode prescribed by that act.

THIS was a writ of *quo warranto*, issued out of the Supreme Court, upon the suggestion of Thomas E. Franklin, Esquire, Attorney-General, against William Garrigues, to show by what warrant he claims to have and exercise the office of an alderman in and for the Twenty-fourth Ward of the city of Philadelphia.

An election was held on the first Tuesday of May, 1855, in the Twenty-fourth Ward of the city of Philadelphia, for seven aldermen, in pursuance of the Acts of Assembly in such case made and provided. The ward is divided into six precincts, and an election was held in each, the original returns of which were filed in the

(9)

[Commonwealth *ex rel.* Attorney-General *v.* Garrigues.]

prothonotary's office of the Court of Common Pleas. At this election there were nine candidates voted for, among whom were the respondent and Henry Wynkoop. The judges and inspectors of the several precincts in the ward met on the day after the election and cast up the votes for the respective candidates, and made out and signed a certificate of the result. In that certificate they certify that William Garrigues, the defendant, received seven hundred and thirty-eight votes, and Henry Wynkoop received seven hundred and thirty-six votes. This certificate was returned and filed in the office of the prothonotary of the Court of Common Pleas, and likewise transmitted to and filed in the office of the secretary of the Commonwealth. Hereupon the governor of the Commonwealth issued commissions to the seven persons appearing by said return to have received the highest number of votes. The number of votes appearing to have been cast for Garrigues were less than those cast for either of the other six to whom commissions were issued. By the several returns from the respective precincts, as separately returned to the office of the prothonotary, and there aggregated, it appeared that the number of votes cast for Garrigues was seven hundred and *twenty-eight*, instead of seven hundred and *thirty-eight*, as contained in the general return and certificate. And the number cast for Wynkoop was seven hundred and thirty-six—the same as contained in the general return. It was therefore alleged on the part of the Commonwealth that there was an error or mistake in casting up the returns, and that Wynkoop was elected by a majority of *eight votes* over Garrigues. And this *quo warranto* was brought to oust Garrigues from the office of alderman, which it was alleged he wrongfully usurped, and to place Wynkoop therein, to which it was alleged he was legally elected.

In his answer the defendant relied upon the election, the return, the certificate by the judges and inspectors of the election, and the commission issued to him in pursuance thereof by the governor of the Commonwealth.

The defendant also filed a special plea, setting forth, that the election referred to was a municipal election of the city of Philadelphia held in accordance with the Acts of Assembly in relation thereto; and, that to the returns of said election, no inquiry was sought or objection made by Wynkoop, or by any other person, in the Court of Common Pleas of the county of Philadelphia, to the regularity or legality of the defendant's election, in the manner and form prescribed by the laws of this Commonwealth; and, therefore, prayed judgment of the said writ, and that the same may be quashed.

By the 35th section of the Act of 2d February, 1854 (Consolidation Act, *Pamphlet Laws*, 1854, p. 40), the returns of all municipal elections in the city of Philadelphia, other than mem-

bers of council, were made subject to the inquiry and determination of the Court of Common Pleas of the county of Philadelphia, upon complaint of fifteen or more qualified voters, which complaint is required to be filed in the said court within twenty days after such election, and to be verified by the affidavits of at least two of the complainants. And the court shall thereupon "proceed upon the merits thereof, and determine finally concerning the same according to the laws of this Commonwealth."

The writ of *quo warranto* issued on the 23d July, 1856.

The Commonwealth replied to the answer of the defendant, alleging that by the returns of the election as filed in the office of the prothonotary, and certified by that officer, it appeared that the defendant was not legally and duly elected to the office claimed by him; but that, on the contrary, it appeared by such returns that Henry Wynkoop received a majority of the votes polled by the qualified voters at the said election for alderman, and that the certificate of election transmitted to the defendant and to the governor, upon which the commission was issued to defendant, was a clerical error, and was not the return of said election as filed in the prothonotary's office. And to the defendant's plea filed, the Commonwealth demurred.

*R. N. Waite*, for the Commonwealth.

*J. B. Townsend*, for defendant.

The opinion of the court was delivered by

Lewis, C. J.—The Act of 2d February, 1854, provides that the returns of all municipal elections (with exceptions not material to the present case) "shall be subject to the inquiry and determination of the Court of Common Pleas of the county of Philadelphia, upon the complaint of fifteen or more of the qualified voters of the proper ward or division, which complaint shall be filed in the said court, within twenty days after such election," &c., and "the said court in judging of such elections shall proceed upon the merits thereof, and *determine finally* concerning the same, according to the laws of the Commonwealth." If the election of William Garrigues had been contested in the manner thus prescribed, the judgment of the Court of Common Pleas would have been final. It would not have been reversed by *quo warranto*, or by any other collateral proceeding. Even a *certiorari* would only draw into review in this court the regularity of the proceedings, without reaching the merits of the case as disclosed in the evidence. On the merits the judgment of the Common Pleas, by the terms of the Act of 1854, is final and irreversible. In addition to the provisions of the statute to this effect, the principle of the common law produces the same result. It is the interest of the public that

[Commonwealth *ex rel.* Attorney-General *v.* Garrigues.]

there should be an end to contention. Justice to the parties requires that no one should be twice vexed for the same cause. For these reasons the general rule of the common law has been established, that no judgment of a court of competent jurisdiction can be re-examined in a collateral proceeding. If the election had been contested in the manner prescribed by the statute, the decree of the Common Pleas could not have been re-examined in this form of action. Can the Commonwealth gain any advantage by disregarding the requirements of the statute? The Act of 1806 furnishes an answer to this question. The remedy prescribed by the statute must be pursued.

But it is argued that the Commonwealth is not bound by the statute. It is true that the general rule in England is that the king is not bound by a statute if he be not named in it. But this rule has many exceptions. All statutes made to suppress wrong, to take away fraud, to prevent the decay of religion, to prevent tortious usurpations, or to secure to electors the right to make free election, are excepted out of this rule in England, and bind the king although he be not named: 5 *Coke's Rep.* 14 *b*; *Dwarris on Statutes*, 27, 28. The Act of 1854 comes within the spirit of several of these exceptions. In addition to this, the subject-matter, being one in which the Commonwealth is the chief party in interest, plainly indicates an intention to bind the state. If this were not the construction, the statute would be almost inoperative. It is therefore our opinion that the remedy prescribed by the Act of 1854 excludes all other remedies for matters which might have been investigated in the form prescribed by that act. It is not necessary to determine how far this statute binds Henry Wynkoop. He is not a party to this suit. He has carefully avoided becoming the relator, or in any way making himself liable for costs.

The 13th section of the Act of 13th April, 1840, applies to writs of *quo warranto* brought by individuals, in which the controversy is "between persons claiming to be duly elected." It does not therefore apply to this case. If it did, it is repealed by the Act of 1854, so far as the former is repugnant to the provisions of the act last mentioned.

It follows that the defendant is entitled to judgment on the demurrer.

> Judgment for the defendant; and it is ordered that the county of Philadelphia pay the costs.